## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-20444-CIV-LENARD/GOODMAN

**OMAR PAEZ,**

      Plaintiff,

**v.**

**CLAUDIA MULVEY, et al.,**

      Defendants.

_____/

**YOVANNY DIAZ,**

      Plaintiff,

**v.**

**CLAUDIA MULVEY, et al.,**

      Defendants.

_____/

**LYNDEAN PETERS,**

      Plaintiff,

**v.**

**CLAUDIA MULVEY, et al.,**

      Defendants.

_____/

**JON ANTERIO,**

      Plaintiff,

**v.**

**CLAUDIA MULVEY, et al.,**

      Defendants.

_____/

<u>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'**</u>
<u>**JOINT MOTION TO DISMISS PLAINTIFFS' JOINT AND CONSOLIDATED**</u>
<u>**AMENDED COMPLAINT AND JURY TRIAL DEMAND (D.E. 67)**</u>

**THIS CAUSE** is before the Court on Defendants Claudia Mulvey, Robert Breeden, Florida Department of Law Enforcement ("FDLE"), John Loyal, Kelly Sullivan, Miami-Dade County ("MDC"), and Town of  Golden Beach's ("Golden Beach") Joint Motion to Dismiss Plaintiffs' Joint and Consolidated Amended Complaint and Jury Trial Demand, ("Motion," D.E. 67), filed August 5, 2015.  Plaintiffs Jon Anterio, Lyndean Peters, Omar Paez, and Yovanny Diaz filed a Joint Response on October 16, 2015, ("Response," D.E. 75), to which Defendants filed a Joint Reply on November 12, 2015, ("Reply, D.E. 80).  Upon review of the Motion, Response, Reply, and the record, the Court finds as follows.

## I.    Background[1]

Plaintiffs Paez, Anterio, and Peters are former police officers for the Town of Golden Beach Police Department; Plaintiff Diaz is still employed there.  (Compl. ¶ 4.)  In 2008, Golden Beach hired Tammy Valdes as a police officer.  (<u>Id.</u> ¶ 14.)  At the time of hire, Valdes had a history of making accusations of illegal conduct against fellow police officers and bringing whistleblower claims and lawsuits against her prior employers, various police departments in Miami-Dade County.   (<u>Id.</u>)   Valdes used these whistleblower claims and lawsuits to secure monetary settlements from her prior employers.  (<u>Id.</u>)

---

[1]    Unless otherwise noted, the following facts are gleaned from Plaintiffs' Joint and Consolidated Amended Complaint ("Am. Compl.," D.E. 66), and are deemed to be true for purposes of Defendants' Motion.

Shortly after she was hired by Golden Beach, Valdes began experiencing employment problems. (Id. ¶ 15.)  She repeatedly failed to show up for work but nevertheless submitted time records to Golden Beach as if she had been working. (Id.)  When Golden Beach became aware of this scheme, Valdes made statements to various Golden Beach police officers that if Golden Beach terminated her employment, she would "bring down" others within the Department. (Id. ¶ 16.)  In November 2009, Valdes was terminated from Golden Beach for failing to satisfy her probationary conditions. (Id. ¶ 17.)

In December 2009, Valdes made a complaint to the MDC Corruptions Investigation Bureau in which she accused a number of Golden Beach police officers, including Plaintiffs, of certain fraudulent conduct. (Id. ¶ 19.)  These accusations were brought to the attention of Defendant Loyal, one of the MDC Public Corruption Investigations Bureau officers with whom Valdes was friends. (Id.)  "Although these accusations were unfounded and unsubstantiated, and it was clear that Valdes was an unreliable and incredible complainant, Loyal, as Valdes' 'insider' with MDC, instructed Valdes to secure additional corroborating evidence from Golden Beach to back up her allegations." (Id.)

As a result of the "false and unreliable accusations," an official investigation was opened in early 2010 by FDLE and the MDC Public Corruptions Investigation Bureau, with the assistance and cooperation of Golden Beach. (Id. ¶ 20.)  Defendant Mulvey was the Special Agent for FDLE assigned to investigate. (Id. ¶¶ 5, 20.)  Defendant Breeden was the Supervising Agent for FDLE. (Id. ¶¶ 6, 20.)

3

The accusations Valdes made against each of the Plaintiffs, and that were investigated, were (1) that they willfully refused to pay Golden Beach an administrative fee that Golden Beach had been charging its officers to purportedly defray administrative costs incurred in connection with police officer off-duty work; and (2) that they were manipulating and falsely reporting their on-duty and off-duty work hours so they would be paid simultaneously by Golden Beach and the off-duty employers.  (Id. ¶ 21.)  Additionally, Valdes accused Plaintiff Peters, of filing and pursuing a fraudulent insurance claim in relation to injuries allegedly sustained by his police dog in a car accident.  (Id.)

With regard to the administrative fee issue, Golden Beach and its Police Department had been charging its police officers the fee purportedly under the authority of Article 29 of the Collective Bargaining Agreement ("CBA") between Golden Beach and the police officer's union.  (Id. ¶ 22.)  However, Article 29 of the CBA, by its express terms, only gave Golden Beach authority to charge the fee to the off-duty employers, not to the police officers.  (Id.)  Additionally, the CBA only covered and governed the conduct of Golden Beach's full-time police officers, not part-time police officers such as Plaintiff Anterio, and for part of the covered period, Plaintiff Diaz.  (Id.)  Furthermore, contrary to the allegations that Valdes had made, and which FDLE and MDC pursued in their investigation, Plaintiffs Paez, Peters, and Diaz had fully paid, and in fact had actually overpaid, the claimed administrative fees to Golden Beach.  (Id.)

With regard to the double compensation issue, Plaintiffs had not been doubly compensated by both Golden Beach and the off-duty employers because Plaintiffs'

4

reported hours were, in fact, the use of "flex time," a practice that was commonly used by the Golden Beach police officers to avoid incurring overtime and to avoid the overtime compensation provisions of the Fair Labor Standards Act ("FLSA").  (Id. ¶ 23.)  This practice of using "flex time" was well known to, and condoned by, the Golden Beach Police Department.  (Id.)  However, Golden Beach provided the FDLE and MDC investigators with incorrect information pertaining to the claims against Plaintiffs and failed to takes steps to exculpate and exonerate Plaintiffs.  (Id. ¶¶ 24-25.)  Golden Beach's conduct led to Plaintiffs being falsely accused of criminal conduct for failing to pay overdue administrative fees, and Peters was falsely accused of committing insurance fraud.  (Id. ¶ 26.)  Notwithstanding Golden Beach's failures, Mulvey and Loyal had sufficient information demonstrating that Plaintiffs had not engaged in any improper, illegal conduct as police officers for Golden Beach.  (Id. ¶ 25.)

The ongoing investigation and the accusations leveled against Plaintiffs eventually gave rise to a hostile work environment within the Golden Beach Police Department.  (Id. ¶ 27.)  In addition, information came to light that Plaintiff Anterio's time records were being manipulated and falsified by others within the police department, apparently to justify false claims of wrongdoing against him.  (Id.)  Although the hostile work environment complaints went up the chain of command, Golden Beach did not address the issue and it continued to get worse.  (Id.)  On July 14, 2010, Anterio, who had increasingly become depressed and anxiety ridden, tendered his resignation from the Golden Beach Police Department, noting in his resignation letter that the resignation was not voluntary but was as a result of the false and malicious allegations that had been

circulated against him and the other officers, and the "increasingly hostile work environment." (Id.)

In January and April 2011, Mulvey and Loyal, at the insistence of William Altfield—the Assistant State Attorney assigned to the investigation ("ASA Altfield")—and with the knowledge and approval of Breeden and Sullivan, prepared and presented to a Miami-Dade County Circuit Judge intentionally false and misleading probable cause affidavits to secure warrants for Plaintiffs' arrests; based on these affidavits, the arrest warrants were issued. (Id. ¶ 29.)

The Complaint alleges that "Mulvey and Loyal deliberately, and in reckless disregard for Plaintiffs' rights, made knowingly false and misleading statements of criminal conduct by Plaintiffs, and deliberately chose to ignore and not mention in the affidavits substantial exculpatory evidence and information." (Id.) Specifically, Paragraph 29 of the Complaint alleges they deliberately made the following false and misleading representations to the judge:

> a) . . . that Plaintiffs had willfully failed to pay the administrative fees for off-duty work when in fact there was no authority for Golden Beach to charge Plaintiffs the administrative fees, and the only written document or policy referencing charging an administrative fee was Article 29 of the CBA, of which Mulvey and Loyal had a copy and were fully aware, that authorized charging a fee only to the off-duty employers;
>
> b) . . . that Plaintiffs had willfully failed to pay the administrative fees for off-duty work, and representing that Golden Beach was a victim of a crime by Plaintiffs not paying the fee, when in fact Golden Beach Town Manager Diaz, in a sworn statement given to Mulvey and Loyal during the investigation, had specifically stated that its officers regularly would pay the administrative fees late and that Golden Beach had regularly accepted late payments;

c) . . . that Plaintiffs Paez, Peters, and Diaz had willfully failed to pay the administrative fees for off-duty work when in fact there was ample exculpatory evidence, willfully ignored by Mulvey and Loyal, including a 2010 sworn statement by Golden Beach Finance Director Camacho, that Plaintiffs had fully paid, and in fact had overpaid, the claimed administrative fees that had been wrongfully charged to them;

d) . . . that Plaintiffs had willfully schemed and sought to be double compensated for both off-duty and on-duty work when in fact both [Police Chief] Skinner and [Police Captain] Barasoain had given sworn statements during the investigation, and there were other officer statements during the investigation, wherein the "flex time" policy was mentioned and described, which would fully explain that Plaintiffs had not engaged in any "double dipping" by receiving simultaneous compensation for both on-duty and off-duty work;

e) . . . that Plaintiffs had willfully schemed and sought to be double compensated for both off-duty and on-duty work when in fact the results of surveillances, GPS, and time clock data, requested by Mulvey and Loyal during the investigation, demonstrated that no unlawful double compensation or any criminal wrongdoing had occurred;

f) . . . that Plaintiffs had willfully schemed and sought to be double compensated for both off-duty and on-duty work when in fact, from the sworn statement of Barasoain, Mulvey and Loyal learned during the investigation, that the time records on which they based their claims of double compensation were completed by other officers, had been altered, and had been forged;

g) . . . that Plaintiffs had willfully schemed and sought to be double compensated for both off-duty and on-duty work based on certain unspecified "payroll time sheets" when in fact the payroll, time, and off-duty work records reviewed by Mulvey and Loyal and their supervisors during the investigation, were, by their own acknowledgements and from statements given to them during the investigation by Skinner, Barasoain, other officers, including former Officer Orlando Martinez, and the off-duty employers, unreliable, misleading, inaccurate, and even forged;

7

h) . . . that Plaintiffs had willfully schemed and sought to be double compensated for both off-duty and on-duty work without disclosing the methods, learned by Mulvey and Loyal during the investigation, by which Plaintiffs were compensated by the off-duty employers, including pay for a four-hour minimum plus one-hour travel time, that often resulted in a one-hour overlap of time, yet no double compensation to Plaintiffs or loss of money by Golden Beach;

i) . . . that Plaintiffs Anterio and Diaz had willfully failed to pay the administrative fees per the CBA for off-duty work during the time Plaintiffs Anterio and Diaz were employed as part-time police officers with Golden Beach and were not in fact covered by the CBA, as had been pointed out to Mulvey and Loyal during the investigation by Skinner in a 2010 sworn statement; and

j) . . . that Plaintiff Peters had engaged in insurance fraud in connection with an allegedly false insurance claim made for alleged injuries sustained by Peters' canine in an automobile accident when in fact the canine's medical records and the accident report, available to and known by Mulvey and Loyal during the investigation, revealed that the canine did in fact get injured in the accident, that Peters received no monetary benefit or financial gain from making the insurance claim, and the only party to receive reimbursement for the clearly legitimate and fully supported claim was Peters' employer, Golden Beach.

(Id. ¶ 29.)  The probable cause affidavit for Plaintiff Peters was presented to the judge, and the arrest warrant issued for Peters on January 5, 2011.  (Id. ¶ 30.)  Peters was arrested the same day.  (Id.)

The probable cause affidavits for Paez, Diaz, and Anterio were presented to the judge, and the arrest warrants issued for them on April 11, 2011.  (Id. ¶ 33.)  Paez and Diaz were arrested on April 12, 2011.  (Id.)  Anterio was not arrested; instead, Altfield informed Anterio, through counsel, that in order for him to avoid arrest and prosecution, he had to forever surrender his State of Florida law enforcement certificate, cease having any further career in law enforcement, and pay Golden Beach the purported $1,805.00

8

outstanding administrative fees upon which the arrest warrant was based.  (Id. ¶ 34.)
Anterio complied; he then "fell apart emotionally and psychologically, became suicidal,
and has not been able to recover."  (Id.)  Golden Beach never negotiated Anterio's
$1,805.00 check because it had become clear, prior to the arrest, that Anterio never owed
the money in the first place, as he was not covered by the CBA due to his part-time status
and the CBA only authorized charging the off-duty employers the fees.  (Id. ¶ 34.)

At the continued insistence of FDLE and MDC, Plaintiffs Paez, Peters, and Diaz
were subjected to over three years of prosecution by the Miami-Dade County Attorney's
Office.  (Id. ¶ 36.)  On March 20, 2014, all criminal charges against Plaintiff Peters were
dropped and the criminal prosecution against Peters dismissed in its entirety after it was
concluded that there was no basis to prosecute Peters, and that there was no evidence to
prove any criminal conduct by Peters beyond a reasonable doubt.  (Id. ¶ 37.)  On March
21, 2014, all criminal charges against Plaintiffs Paez and Diaz were dropped and the
criminal prosecutions against them dismissed in their entirety after it was concluded that
there was no basis to prosecute them, and that there was no evidence to prove any
criminal conduct by Plaintiffs beyond a reasonable doubt.  (Id. ¶ 38.)

In January 2015, Plaintiffs filed separate actions against Defendants in state court,
which Defendants subsequently removed to federal court.  On March 9, 2015, the Court
granted the Parties' Joint Motion to Transfer all the cases to this division.  (See D.E. 33.)
On June 26, 2015, the Court ordered Plaintiffs to file a single, consolidated amended
complaint for pretrial purposes. (See D.E. 65.)

On July 6, 2016, Plaintiffs filed the operative Joint Amended Consolidated Complaint.  (D.E. 66.)  On August 5, 2016, Defendants filed the instant Joint Motion to Dismiss Plaintiffs' Joint and Consolidated Amended Complaint for failure to state a claim.  (D.E. 67.)  In their Response, Plaintiffs withdraw several of their claims.  (See Resp. at 21-22, 35 n.5.) The following claims asserted by Plaintiffs Paez, Peters, and Diaz remain for the Court's consideration:

- <u>Count III</u>: Malicious prosecution against Defendant Mulvey under 42 U.S.C. § 1983;

- <u>Count IV</u>: Malicious prosecution against Defendant Loyal under 42 U.S.C. § 1983;

- <u>Count V</u>: Supervisory liability against Defendant Breeden under 42 U.S.C. § 1983;

- <u>Count VI</u>: Supervisory liability against Defendant Sullivan under 42 U.S.C. § 1983;

- <u>Count IX</u>: Malicious prosecution against Defendant Mulvey under Florida law;

- <u>Count X</u>: Malicious prosecution against Defendant Loyal under Florida law;

- <u>Count XII</u>: Negligent supervision against FDLE under Florida law; and

- <u>Count XIII</u>: Negligent supervision/retention against MDC under Florida law.

(Compl. ¶¶ 42-130, 136-224, 230-319.)   Plaintiff Paez and Peters (but not Diaz) assert one additional claim:

- <u>Count XIV</u>: Respondeat superior liability against Golden Beach for the negligence of Diaz, Camacho, and Skinner under Florida law.[2]

---

[2]      Paez and Peters withdraw subparagraphs (b) and (f) of Count XIV.  (Resp. at 35 n.5).

(Id. ¶¶ 131-135, 225-229.)   The following claims asserted by Plaintiffs Anterio remain for the Court's consideration:

- <u>Count I</u>: Abuse of criminal process against Defendant Mulvey under 42 U.S.C. § 1983;

- <u>Count II</u>: Abuse of criminal process against Defendant Loyal under 42 U.S.C. § 1983;

- <u>Count III</u>: Supervisory liability against Defendant Breeden under 42 U.S.C. § 1983;

- <u>Count IV</u>: Supervisory liability against Defendant Sullivan under 42 U.S.C. § 1983;

- <u>Count V</u>: Abuse of criminal process against Defendant Mulvey under Florida law;

- <u>Count VI</u>: Abuse of criminal process against Defendant Loyal under Florida law;

- <u>Count X</u>: Negligent supervision against FDLE under Florida law;

- <u>Count XI</u>: Negligent supervision/retention against MDC under Florida law; and

- <u>Count XII</u>: Respondeat superior liability against Golden Beach for the negligence of Diaz, Camacho, and Skinner under Florida law.[3]

(Id. ¶¶ 320-386.)   On September 9, 2016, Peters and the Town of Golden Beach filed a Stipulation for Dismissal with Prejudice of Peters' Claims Against Golden Beach.  (D.E. 81.)   Consequently, only Paez (Count XIV) and Anterio (Count XII) have outstanding claims against Golden Beach.

## II.   **Legal Standard**

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a claim for "failure to state a claim upon which relief can be granted."   "To survive a motion to

---

[3]      Anterio withdraws subparagraphs (b) and (f) of Count XII.

dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).   Conclusory statements, assertions or labels will not survive a 12(b)(6) motion to dismiss.  Id.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.; see also Edwards v. Prime, Inc., 602 F.3d 1276, 1291 (11th Cir. 2010) (setting forth the plausibility standard).   "Factual allegations must be enough to raise a right to relief above the speculative level[.]"   Twombly, 550 U.S. at 555 (citation omitted).

Additionally:

> Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions.  Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").   In evaluating the sufficiency of a plaintiff's pleadings, we make reasonable inferences in Plaintiff's favor, "but we are not required to draw plaintiff's inference."   Aldana v. Del Monte Fresh Produce, N.A., Inc., 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. Id.; see also Iqbal, 129 S. Ct. at 1951 (stating conclusory allegations are "not entitled to be assumed true").

Sinaltrainal v. Coca-Cola, 578 F.3d 1252, 1260 (11th Cir. 2009), abrogated on other grounds by Mohamad v. Palestinian Auth., __ U.S. __, 132 S. Ct. 1702, 1706 n.2 (2012). The Eleventh Circuit has endorsed "a 'two-pronged approach' in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then

determine whether they plausibly give rise to an entitlement to relief.'"  American Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting Iqbal, 556 U.S. at 679).

## III.    Discussion

In Plaintiffs' Response to the instant Motion, Paez, Peters, and Diaz withdraw Counts I, II, VII, VIII, and XI, (Resp. at 21-22); Paez and Peters withdraw Count XIV(b) and (f), (id. at 35 n.5); and Anterio withdraws Counts VII, VIII, IX, and XII(b) and (f), (see id. at 20-21, 35 n.5).  Accordingly, those counts are dismissed without prejudice. Defendants argue that the remaining counts are also subject to dismissal.  (See Reply at 3.)  With respect to the remaining counts, the Court will first address the claims under 42 U.S.C. § 1983 against Defendants Mulvey and Loyal; then, the Court will address the 1983 claims against Defendants Breeden and Sullivan; finally, the Court will address the state law claims.

### a.    Counts III and IV (Paez, Peters, Diaz): Malicious prosecution under 42 U.S.C. § 1983 against Defendants Mulvey and Loyal, respectively

In Counts III and IV, Paez, Peters, and Diaz allege civil rights violations under 42 U.S.C. § 1983 for malicious prosecution against Defendants Mulvey and Loyal, respectively.  (Compl. ¶¶ 59-76, 153-170, 247-264.)  Mulvey and Loyal argue that Paez, Peters, and Diaz fail to state a claim for malicious prosecution under 42 U.S.C. § 1983. (Mot. at 14-16, 32-33.)  Additionally, Mulvey and Loyal assert that they are entitled to qualified immunity on the 1983 claims.  (Id. at 18-21; 33-36.)

### 1.    Failure to state a claim

To establish a federal malicious prosecution claim under § 1983, a plaintiff must prove (1) the elements of the common law tort of malicious prosecution, and (2) a violation of her Fourth Amendment right to be free from unreasonable seizures." Kingsland v. City of Miami, 382 F.3d 1220, 1234 (11th Cir. 2004) (citing Wood v. Kesler, 323 F.3d 872, 881 (11th Cir. 2003) (citing Uboh v. Reno, 141 F.3d 1000, 1002-04 (11th Cir. 1998))).

> Under Florida law, a plaintiff must establish each of six elements to support a claim of malicious prosecution: (1) an original judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damages as a result of the original proceeding.

Id. (citing Durkin v. Davis, 814 So. 2d 1246, 1248 (Fla. Dist. Ct. App. 2002)).  With respect to the Fourth Amendment violation, the Eleventh Circuit has acknowledged that "an arrest without probable cause violates the right to be free from an unreasonable search under the Fourth Amendment."  Durruthy v. Pastor, 351 F.3d 1080, 1088 (11th Cir. 2003) (citing Redd v. City of Enterprise, 140 F.3d 1378, 1382 (11th Cir. 1998)).  It has also characterized an arrest without probable cause as an "unreasonable seizure that violates the Fourth Amendment."  Grider v. City of Auburn, Ala., 618 F.3d 1240, 1256 (11th Cir. 2010) (citations omitted).

Mulvey and Loyal argue that Paez, Peters, and Diaz cannot establish a Fourth Amendment violation or the "absence of probable cause" prong of a common law malicious prosecution tort.  (Mot. at 15-16.)  Specifically, they argue that Paez, Peters,

and Diaz failed to "point to any specific statement contained in any of the affidavits, or any fact missing from any of the affidavits, that if removed or added, would negate a finding of probable cause for their arrests." (Id.)  Loyal further argues that Paez, Peters, and Diaz's failure to allege a seizure independent from their respective arrests is fatal to their claim.  (Id. at 32.)

"The Warrant Clause of the Fourth Amendment requires that warrant applications contain sufficient information to establish probable cause."  Holmes v. Kucynda, 321 F.3d 1069, 1083 (11th Cir. 2003) (citing Franks v. Delaware, 438 U.S. 154, 164 (1978)). "[W]hen the Fourth Amendment demands a factual showing sufficient to comprise 'probable cause,' the obvious assumption is that there will be a truthful showing." Franks, 438 U.S. at 164-65.  "While this condition does not dictate that the statements be objectively accurate, it does require that they 'be 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true.'" Holmes, 321 F.3d at 1083 (quoting Franks, 438 U.S. at 165).  Thus, a police officer may be held liable under 42 U.S.C. § 1983 for submitting an application for an arrest warrant that deliberately or recklessly (1) contains false or misleading information, or (2) omits material information.  Id. (citing Malley v. Briggs, 475 U.S. 335, 346 (1986); Jones v. Cannon, 174 F.3d 1271, 1285 (11th Cir. 1999)); see also Madiwale v. Savaiko, 117 F.3d 1321, 1326 (11th Cir. 1997) ("[A] warrant violates the Fourth Amendment when it contains omissions made intentionally or with a reckless disregard for the accuracy of the affidavit.") (citations and internal quotation marks omitted); Kelly v. Curtis, 21 F.3d 1544, 1554 (11th Cir. 1994) ("Under Franks, a police officer violates the Constitution if,

in order to obtain a warrant, she perjures herself or testifies in reckless disregard of the truth.").  "When assessing whether the alleged false statements and omissions were material, the trial court is to disregard those portions of the affidavit which the defendant has shown are arguably false or misleading."  United States v. Kapordelis, 569 F.3d 1291, 1309 (11th Cir. 2009) (citing Franks, 438 U.S. at 171-72)).  "[E]ven intentional or reckless omissions will invalidate a warrant only if inclusion of the omitted facts would have prevented a finding of probable cause."  Madiwale, 117 F.3d at 1327.

Here, the Complaint alleges that Mulvey and Loyal deliberately and/or recklessly made the following false and misleading representations to the judge:

- Plaintiffs willfully failed to pay the administrative fees for off-duty work when in fact there was no authority for Golden Beach to charge Plaintiffs the administrative fees;

- Plaintiffs Paez, Peters, and Diaz willfully failed to pay the administrative fees for off-duty work when in fact there was ample exculpatory evidence, willfully ignored by Mulvey and Loyal, including a 2010 sworn statement by Golden Beach Finance Director Camacho, that Plaintiffs had fully paid, and in fact had overpaid, the claimed administrative fees that had been wrongfully charged to them;

- Plaintiffs willfully schemed and sought to be double compensated for both off-duty and on-duty work when in fact both Police Chief Skinner and Police Captain Barasoain had given sworn statements during the investigation, and there were other officer statements during the investigation, wherein the "flex time" policy was mentioned and described, which would fully explain that Plaintiffs had not engaged in any "double dipping" by receiving simultaneous compensation for both on-duty and off-duty work;

- Plaintiffs willfully schemed and sought to be double compensated for both off-duty and on-duty work when in fact the results of surveillances, GPS, and time clock data, requested by Mulvey and Loyal during the investigation, demonstrated that no unlawful double compensation or any criminal wrongdoing had occurred;

- Plaintiffs willfully schemed and sought to be double compensated for both off-duty and on-duty work when in fact, from the sworn statement of Barasoain, Mulvey and Loyal learned during the investigation, that the time records on which they based their claims of double compensation were completed by other officers, had been altered, and had been forged;

- Plaintiffs willfully schemed and sought to be double compensated for both off-duty and on-duty work based on certain unspecified "payroll time sheets" when in fact the payroll, time, and off-duty work records reviewed by Mulvey and Loyal and their supervisors during the investigation, were, by their own acknowledgements and from statements given to them during the investigation by Skinner, Barasoain, other officers, including former Officer Orlando Martinez, and the off-duty employers, unreliable, misleading, inaccurate, and even forged;

- Plaintiffs willfully schemed and sought to be double compensated for both off-duty and on-duty work without disclosing the methods, learned by Mulvey and Loyal during the investigation, by which Plaintiffs were compensated by the off-duty employers, including pay for a four-hour minimum plus one-hour travel time, that often resulted in a one-hour overlap of time, yet no double compensation to Plaintiffs or loss of money by Golden Beach;

- Plaintiffs Anterio and Diaz willfully failed to pay the administrative fees per the CBA for off-duty work during the time Plaintiffs Anterio and Diaz were employed as part-time police officers with Golden Beach and were not in fact covered by the CBA, as had been pointed out to Mulvey and Loyal during the investigation by Skinner in a 2010 sworn statement; and

- Plaintiff Peters had engaged in insurance fraud in connection with an allegedly false insurance claim made for alleged injuries sustained by Peters' canine in an automobile accident when in fact the canine's medical records and the accident report, available to and known by Mulvey and Loyal during the investigation, revealed that the canine did in fact get injured in the accident, that Peters received no monetary benefit or financial gain from making the insurance claim, and the only party to receive reimbursement for the clearly legitimate and fully supported claim was Peters' employer, Golden Beach.

(Id. ¶ 29.)  The Court finds that these allegations, accepted as true, plausibly allege that

Mulvey and Loyal intentionally and/or recklessly provided misleading information in

17

their application for arrest warrants, and/or omitted material information therefrom.  That is, including the omitted facts in the warrant applications and omitting the misleading information therefrom would have prevented a finding of probable cause.

Loyal's additional argument—that Paez, Peters, and Diaz failed to state a claim for malicious prosecution under Section 1983 because they have not alleged a seizure independent from their respective arrests—is misplaced.  A seizure independent from arrest is only required for a malicious prosecution claim based on a <u>warrantless</u> arrest. <u>See</u> <u>Kingsland</u>, 382 F.3d at 1235.  This is because where a warrantless arrest is concerned, "the judicial proceeding does not begin until the party is arraigned or indicted."  <u>Id.</u>  "Thus, the plaintiff's arrest cannot serve as the predicate deprivation of liberty because it occurred prior to the time of arraignment, and was not one that arose from malicious prosecution as opposed to false arrest."  <u>Id.</u> (internal quotation marks and citation omitted).

However, "[t]he issuance of a warrant—even an invalid one . . . –constitutes legal process."  <u>Carter v. Gore</u>, 557 F. App'x 904, 906 (11th Cir. 2014).  Thus, a subsequent arrest is actionable as an unlawful seizure in a malicious prosecution claim under Section 1983. <u>Id.</u>  That is what happened here.  Accordingly, the Court rejects Loyal's claim.

In sum, the Court finds that Paez, Peters, and Diaz have plausibly alleged a claim under 42 U.S.C. § 1983 for malicious prosecution against Mulvey and Loyal.  Specifically, they have alleged (1) that they were arrested without probable cause in violation of the Fourth Amendment, and (2) the elements of the common law tort of

malicious prosecution (the "absence of probable cause" element was the only element of the tort Mulvey and Loyal challenged).

### 2.      Qualified immunity

Mulvey and Loyal alternatively argue that they are entitled to qualified immunity from Paez, Peters, and Diaz's 1983 claim for malicious prosecution.  (Mot. at 18-21, 33-36.)   "Qualified immunity shelters government officials performing discretionary functions from 'liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Corey Airport Servs., Inc. v. Decosta, 587 F.3d 1280, 1284-85 (11th Cir. 2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  "The doctrine 'balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'"  Id. (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)).  "In sum, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'"  Von Stein, 904 F.2d at 579.

To receive qualified immunity, the government official must first prove that he was acting within his discretionary authority.  Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003) (citing Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002)).  "A government official acts within his or her discretionary authority if objective circumstances compel the conclusion that challenged actions occurred in the performance of the official's duties and within the scope of this authority."  Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1185 n.17 (11th Cir. 1994).  Here, Mulvey and Loyal

19

acknowledge that they were acting within their discretionary authority when they submitted the arrest affidavits.  (Mot. at 19, 33.)

"Once the defendants have established that they were acting within their discretionary authority, the burden shifts to the plaintiffs to show that qualified immunity is not appropriate."  Gonzalez, 325 F.3d at 1234 (citing Vinyard, 311 F.3d at 1346.)  To satisfy this burden, "the plaintiff must demonstrate (1) that 'the facts show that the official violated the plaintiff's constitutional rights' and (2) that 'the law clearly established those rights at the time of the alleged misconduct.'"  Mobley v. Palm Beach Cnty. Sheriff Dep't, 783 F.3d 1347, 1352-53 (11th Cir. 2015) (quoting Morton v. Kirkwood, 707 F.3d 1276, 1281 (11th Cir. 2013)); see also Morris v. Town of Lexington Ala., 748 F.3d 1316, 1322 (11th Cir. 2014) (citing Pearson, 555 U.S. at 232).

### A.      Constitutional rights violated

To receive qualified immunity from Section 1983 liability for malicious prosecution, an officer need not have actual probable cause, but only arguable probable cause.  See Grider, 618 F.3d at 1257.  "Arguable probable cause exists where 'reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff.'"  Id. (quoting Kingsland, 382 F.3d at 1232).

As discussed supra in Section III(a)(1), Paez, Peters, and Diaz allege that Loyal and Mulvey violated their Fourth Amendment rights by deliberately and/or recklessly provided misleading information in their arrest warrant affidavits, and/or omitted material information therefrom.  See Holmes, 321 F.3d at 1083 ("[A] police officer may be held

liable under 42 U.S.C. § 1983 for submitting an application for an arrest warrant that contains false information.").  In <u>Kingsland</u>, the Eleventh Circuit found a similar claim was sufficient to defeat summary judgment on the issue of qualified immunity: "If the defendants fabricated or unreasonably disregarded certain pieces of evidence to establish probable cause or arguable probable cause, as alleged, reasonable officers in the same circumstances and possessing the same knowledge as the defendants could not have believed that probable cause existed to arrest the plaintiff."  382 F.3d at 1233; <u>see also</u> <u>Holmes</u>, 321 F.3d at 1083-84 (reversing the grant of qualified immunity where factual questions existed regarding whether the officers filed a recklessly false application for an arrest warrant); <u>Garmon v. Lumpkin Cnty.</u>, 878 F.2d 1406, 1410-11 (11th Cir. 1989) (holding that sheriff was not entitled to qualified immunity where he directed an investigator to submit a warrant application that contained knowingly false statements).

The same principle applies here: if, as alleged in the Complaint, Mulvey and Loyal deliberately and/or recklessly provided misleading information in their arrest warrant affidavits, and/or omitted material information therefrom, "reasonable officers in the same circumstances and possessing the same knowledge as the defendants could not have believed that probable cause existed to arrest the plaintiff."  <u>Kingsland</u>, 382 F.3d at 1233. Indeed, as alleged in the Complaint, the omissions "'were . . . so clearly material that every reasonable law officer would have known that their omission would lead to a search in violation of federal law.'"  <u>Madiwale</u>, 117 F.3d at 1327 (quoting <u>Haygood v. Johnson</u>, 70 F.3d 92, 95 (11th Cir. 1995)).  Accordingly, Mulvey and Loyal lacked arguable probable cause, and Plaintiffs have sufficiently alleged that their Fourth

Amendment rights were violated.  See Kingsland, 382 F.3d at 1233; Holmes, 321 F.3d at 1083-84; Garmon, 878 F.2d at 1410-11.

### B.   Clearly established law

"[T]he law was clearly established in [2011] that the Constitution prohibits a police officer from knowingly making false statements in an arrest affidavit about the probable cause for an arrest."  Holmes, 321 F.3d 1084 (quoting Jones v. Cannon, 174 F.3d 1271, 1285 (11th Cir. 1999)).  Accordingly, Mulvey and Loyal are not entitled to qualified immunity.

### b.   Counts I & II (Anterio):
### Abuse of criminal process under 42 U.S.C. § 1983 against Defendants Mulvey and Loyal, respectively

Although an arrest warrant issued for Plaintiff Anterio, he was ultimately never arrested.  (See Compl. ¶ 34.)  Rather, the Assistant State Attorney informed Anterio that, "in order for Anterio to avoid arrest and prosecution, Anterio had to forever surrender his State of Florida law enforcement certificate, cease having any further career in law enforcement, and pay Golden Beach the purported $1805.00 upon which the arrest was based."  (Id.)  "As a result of this threat of impending arrest and prosecution, the public and professional humiliation and enormous legal costs that he would face to defend himself, and the severe mental and emotional distress that he had experienced in the hostile work environment in the Golden Beach Police Department, Anterio signed away his police certificate, and issued a check to Golden Beach in the amount of $1805.00 for the purported debt."  (Id.)

Anterio brings claims against Mulvey and Loyal for Abuse of Criminal Process under Section 1983, alleging that Mulvey and Loyal violated his Fourth Amendment right "to be free from unlawful seizure of his property," and his Fourteenth Amendment right "to be free from the deprivation of his life, liberty and property without due process of law." (Compl.¶¶ 321, 329.)

Mulvey and Loyal move to dismiss these Counts on the grounds that they fail to state claims, and that Mulvey and Loyal are entitled to qualified immunity. (Mot. at 16-18, 35-39.) Because the Court finds that Anterio has failed to state a claim for abuse of criminal process, it need not determine at this time whether Mulvey and Loyal are entitled to qualified immunity.

Mulvey argues that Anterio cannot state a Section 1983 claim for abuse of criminal process because he has not alleged, and cannot allege, a constitutional violation under either the Fourth or Fourteenth Amendments. (See Mot. at 17.) Specifically, Mulvey argues that Anterio's Fourteenth Amendment claim is foreclosed by Albright v. Oliver, 510 U.S. 266, 271 (1994) and Jordan v. Mosley, 298 F. App'x 803 (11th Cir. 2008), and that Anterio failed to allege a Fourth Amendment violation because he has not alleged a government seizure, "much less that the seizure was unreasonable." (Id.) Mulvey further argues that there is no causal connection between any conduct she is alleged to have engaged in and any deprivation of Anterio's constitutional rights. (Id. at 18.)

Anterio acknowledges that neither the Eleventh Circuit nor the United States Supreme Court has recognized a 1983 claim for abuse of criminal process. (Resp. at 8.)

23

However, he argues that the Second Circuit has recognized the claim and urges this Court to follow suit.  (Id. (citing Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994)).)

In Jordan v. Mosley, the Eleventh Circuit affirmed the district court's "refusal to recognize [the plaintiff's] ill-defined constitutional abuse of process claim."  298 F. App'x at 805.  It did not determine whether the claim could ever be cognizable, but stated that in light of the Supreme Court's Albright decision,[4] "even if abuse of process could be a cognizable tort under section 1983, proper analysis would be under the Fourth Amendment" rather than the Fourteenth Amendment.  Id. at 806.  Because no Fourth Amendment violation occurred in Jordan, it did not need to go any further.  See id.

Here, Anterio claims a violation of his Fourth Amendment right "to be free from unlawful seizure of his property[.]"  (Compl. ¶¶ 321, 329.)  This appears to be based on the fact that in order to avoid arrest and prosecution, ASA Altfield required Anterio to surrender his Florida law enforcement certificate and pay Golden Beach the $1,805.00 in purported outstanding administrative fees upon which the arrest was based.  (See Compl. ¶¶ 31, 34.)  However, the City of Golden Beach never negotiated the $1,805 check Anterio provided.  (Compl. ¶ 34.)  Thus, it cannot be argued that any Defendant unlawfully seized his money.  See United States v. Jacobsen, 466 U.S. 109, 113 (1984) ("A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property.").

---

[4]    In Albright, "the Supreme Court held that an allegation of prosecution without probable cause must also be analyzed under the Fourth Amendment, without reference to the more general considerations of substantive due process."  Tinney v. Shores, 77 F.3d 378, 381 (11th Cir. 1996).

Additionally, the Complaint does not sufficiently plead, and Anterio's Response makes no effort to demonstrate, that Anterio had a Fourth Amendment property interest in his position at Golden Beach or his career as a police officer.  See Ross v. Clayton Cnty., Ga., 173 F.3d 1305, 1307 (11th Cir. 1999) ("A public employee has a property interest in employment if 'existing rules or understandings that stem from an independent source such as state law create a legitimate claim of entitlement.'") (quoting Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577-78 (1972)).  To this end, the Court notes that the Complaint alleges that Anterio was a part-time officer, (Compl. ¶ 25), and the Eleventh Circuit has held that a part-time police officer in Florida has no property interest in his job for purposes of establishing a 1983 claim, see Thomason v. McDaniel, 793 F.2d 1247, 1249 (11th Cir. 1986).  In a 1983 case, "[w]here the right said to be violated is the Fourth Amendment, the plaintiff must establish a concrete violation of that right."  Whiting v. Traylor, 85 F.3d 581, 586 (11th Cir. 1996).  Anterio has not pled a concrete violation of his Fourth Amendment rights.

Accordingly, assuming arguendo that a claim for abuse of criminal process under Section 1983 is cognizable, the Court finds that Anterio has failed to state a claim for it against Mulvey and Loyal.   Anterio's Counts I and II are dismissed without prejudice.

c. **Counts V & VI (Paez, Peters, Diaz) and Count III & IV (Anterio):
Supervisory liability under 42 U.S.C. § 1983 against Defendants
Breeden and Sullivan, respectively**

Defendants Breeden and Sullivan move to dismiss Plaintiffs' claims for supervisory liability under Section 1983 for failure to state a claim.  (Mot. at 47-49, 53-

55.)  They further argue that they are entitled to qualified immunity.  (Id. at 49-51, 55-56.)

### 1.    Failure to state a claim

"It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."  Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted).  "Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation."  Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (citing Gonzalez, 325 F.3d at 1234-35).  A causal connection can be established when (1) a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so, (2) the supervisor's improper custom or policy resulted in deliberate indifference to constitutional rights, or (3) the facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.  Gonzalez, 325 F.3d at 1234-35 (citations omitted).  Here, Plaintiffs invoke the third method.

### A.    Anterio

First, because Anterio has not sufficiently alleged a constitutional violation under Section 1983 for abuse of criminal process against Mulvey and Loyal, (see supra Section

26

III(b)), a fortiori he has failed to state a claim against Breeden and Sullivan for supervisory liability.  That is, because Mulvey and Loyal did not act unlawfully as to Anterio, Breeden and Sullivan cannot be liable for directing them to act unlawfully. Thus, Anterio's Counts III and IV must be dismissed without prejudice.

### B.      Paez, Peters, and Diaz

In support of their supervisory liability claim, Paez, Peters, and Diaz first point to Paragraph 25 of the Complaint, which alleges that Mulvey and Loyal, misrepresented the investigation findings and deliberately ignored exculpatory evidence "with the knowledge, approval, and participation of their supervisors, Breeden and Sullivan[.]" (Resp. at 23.)  However, this statement is not supported by any facts.  It is the sort of conclusory, "unadorned, the-defendant-unlawfully-harmed-me accusation" that is insufficient to state a claim under Twombly.  Iqbal, 555 U.S. at 678.

Plaintiffs also point to paragraphs 79, 85, 173, 179, 267, and 273 of the Complaint. (Resp. at 23.)  These paragraphs allege that Breeden, acting as Mulvey's supervisor, and Sullivan, acting as Loyal's supervisor: (1) actively participated in Mulvey/Loyal's unconstitutional conduct; (2) directed Mulvey/Loyal to engage in the unconstitutional conduct; and/or (3) acted with deliberate indifference to Mulvey/Loyal's unconstitutional conduct by failing to prevent them "from manipulating the investigation results, ignoring substantial exculpatory evidence during the investigation, and preparing a deliberately false and misleading probable cause arrest warrant with knowledge of such improper conduct."  (Compl. ¶¶ 79, 85, 173, 179, 267, 273, 337, and 343.)  These paragraphs further allege that Breeden and Sullivan were made aware by (1) Mulvey and Loyal

personally, (2) Mulvey and Loyal's investigative reports, and (3) reviewing the evidence and testimony garnered during the investigations, of the true facts and exculpatory and conflicting evidence that Plaintiffs had not committed any crime.  (Id.)  Finally, these paragraphs allege that Breeden and Sullivan, "with knowledge that there was insufficient evidence that any crime had been committed, reviewed, approved and allowed" Mulvey and Loyal to make the deliberately false and misleading statements in their arrest affidavits.  (Id.)

The Court initially finds that these allegations are sufficient to plausibly allege supervisory liability under 1983.  They allege not only that Breeden and Sullivan knew of exculpatory and conflicting evidence, but also how Breeden and Sullivan became aware of such evidence.  Finally, they allege that although Breeden and Sullivan were armed with knowledge that Plaintiffs committed no crime, they "approved and allowed" Mulvey and Loyal to make the deliberately false and misleading statements in their arrest affidavits.  These allegations support the inference that Breeden and Sullivan knew that the subordinates would act unlawfully and failed to stop them from doing so.[5]

---

[5]      The Court rejects Sullivan's reliance on Gonzalez, where the Eleventh Circuit found that accusations of supervisory liability were insufficient to state a claim.  325 F.3d at 1235.   First, the allegations contained in the Gonzalez complaint were more vague and conclusory than those alleged here.  See id. ("Plaintiffs allege that these [supervisor] defendants 'personally directed and caused a paramilitary raid upon [their] residence, and had actual knowledge of, and agreed to, and approved of, and acquiesced in, the raid in violation of the Fourth Amendment rights of Plaintiffs herein.'  Plaintiffs also allege that the agents on the scene 'acted under the personal direction of [the supervisory defendants] and with the knowledge, agreement, approval, and acquiescence of [the supervisory defendants].'   Finally, plaintiffs allege that these [supervisory] defendants 'personally participated in the constitutional violations, and there was clearly a causal connection between their actions and the constitutional deprivation.'").   Second, in Gonzalez, the Eleventh Circuit reviewed the claims under a heightened pleading standard.  See id. ("In examining the factual allegations in the complaint, we

However, Breeden argues that he cannot be held liable for supervisory liability as to Paez and Diaz because he was not Mulvey's supervisor when she submitted the Affidavits in support of Paez and Diaz's arrests.  (Mot. at 48.)  Although Breeden was Mulvey's supervisor at FDLE, (Compl. ¶ 6), Mulvey was no longer an FDLE employee when she submitted the Affidavits in support of Paez and Diaz's arrests.  (Mot. at 48.)  Rather, the Affidavits in support of Paez and Diaz's arrests identify Mulvey as "a newly sworn Deputy Sheriff of the Miami-Dade Police Department."  (See Paez Aff., D.E. 66-1; Diaz Aff., D.E. 66-3.)[6, 7]  Plaintiffs wholly fail to address this discrepancy in their Response.  Consequently, the Court finds that the Complaint fails to plausibly allege supervisory liability under Section 1983 against Breeden as to Paez and Diaz.

The Affidavit in support of Peters's arrest, on the other hand, identifies Mulvey as a "Special Agent with the Florida Department of Law Enforcement," (D.E. 66-2),[8] where

---

must keep in mind the heightened pleading requirements for civil rights cases, especially those involving the defense of qualified immunity.").  That heightened standard is no longer applied in civil rights cases.  See, e.g., Hoefling v. City of Miami, 811 F.3d 1271, 1275-76 (11th Cir. 2016).

[6]     "On a motion to dismiss, the Court may consider documents attached to the Complaint or directly referred to in the Complaint.  Exhibits attached to a Complaint are properly considered part of the pleadings for all purposes, including a Rule 12(b)(6) motion."  Jordan v. Miami-Dade Cnty., 439 F. Supp. 2d 1237, 1240 (S.D. Fla. 2006) (citing Solis-Ramirez v. U.S. Dep't of Justice, 758 F.2d 1426, 1430 (11th Cir. 1985)).

[7]     The Affidavit in support of Anterio's arrest likewise identifies Mulvey as an MDPD employee, and therefore Breeden was not Mulvey's supervisor when she submitted the Anterio Affidavit.  Thus, even if Anterio had alleged a constitutional violation, Breeden would not be liable to Anterio for the independent reason that Breeden was not Mulvey's supervisor.

[8]     Although Plaintiffs attached to the Complaint an unsigned and unexecuted copy of the Affidavit in support of Peters's arrest, Breeden does not argue that he was not Mulvey's supervisor when it was presented to the circuit court judge.

Breeden was Mulvey's supervisor, (Compl. ¶ 6).  Accordingly, Peters has stated a 1983 claim for supervisory liability against Breeden.

### 2.  Qualified immunity

Breeden and Sullivan argue that to the extent Plaintiffs state a claim for supervisory liability, they are nevertheless entitled to qualified immunity.  (Mot. at 49-51, 55-56.)  Breeden and Sullivan appear to concede that they were acting within their discretionary authority.  (See id.)  Thus, the question turns to whether Plaintiffs have demonstrated that (1) the facts show that Breeden and Sullivan violated Plaintiffs' constitutional rights and (2) the law clearly established those rights at the time of the alleged misconduct.  Mobley, 783 F.3d at 1352-53.

Breeden and Sullivan argue that they are entitled to qualified immunity because Plaintiffs failed to satisfy the Twombly/Iqbal pleading standards for supervisory liability under Section 1983.  (Mot. at 51, 53.)  However, the Court previously determined that Paez, Peters, and Diaz did sufficiently plead a Section 1983 claim for supervisory liability as to Defendant Sullivan, and Peters sufficiently pled a 1983 supervisory liability claim as to Defendant Breeden.  (See supra Section III(c)(1).)

Sullivan further argues that his actions did not contravene clearly-established law. (Mot. at 55-56.)  However, as the Court previously noted, "the law was clearly established in [2011] that the Constitution prohibits a police officer from knowingly making false statements in an arrest affidavit about the probable cause for an arrest." Holmes, 321 F.3d 1084 (quoting Jones v. Cannon, 174 F.3d 1271, 1285 (11th Cir.

1999)); see also Garmon, 878 F.2d at 1410-11 (holding that sheriff was not entitled to qualified immunity where he directed an investigator to submit a warrant application that contained knowingly false statements).   Accordingly, Breeden and Sullivan are not entitled to qualified immunity for approving and allowing their subordinate police officers to make false statements in affidavits for arrests.

In sum, the Court finds that: (1) Paez, Peters, and Diaz sufficiently state claims under Section 1983 for supervisory liability against Sullivan (as Loyal's supervisor at MDPD); (2) Peters sufficiently states a claim for supervisory liability against Breeden (as Mulvey's supervisor at FDLE); and (3) the remaining claims for supervisory liability are dismissed without prejudice.

> **d.**   **Counts IX and X (Paez, Peters, Diaz):**
> **Malicious   prosecution   under   Florida   law   against   Defendants**
> **Mulvey and Loyal, respectively**

In its discussion of Paez, Peters, and Diaz's claim for malicious prosecution under 1983 above, the Court found that Paez, Peters, and Diaz have sufficiently pled "the elements of the common law tort of malicious prosecution (the 'absence of probable cause' element was the only element of the tort Mulvey and Loyal challenged)."   (Section III(a)(1), supra.)   Mulvey and Loyal separately move to dismiss Paez, Peters, and Diaz's claims for malicious prosecution under Florida law on the grounds that they are barred by sovereign immunity.   (Mot. at 22-23, 44-45.)

In Florida, police officers acting within the scope of their employment are shielded from tort liability unless the officer "acted in bad faith or with malicious purpose or in a

31

manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a).

The Complaint alleges that Mulvey and Loyal's actions "were taken in bad faith and with improper and malicious purpose," specifically, for Mulvey and Loyal "to justify the many unnecessary investigative hours, including overtime hours, expended and charged to the case, and to assist [Tammy] Valdes in her unjustified vendetta against Golden Beach and the targeted police officers," including Paez, Peters, and Diaz. (Compl. ¶¶ 65, 74, 159, 168, 253, and 262.)

Mulvey argues that notwithstanding these allegations of maliciousness and bad faith, police officers are statutorily immune from tort liability if there was arguable probable cause for the arrest.  (Mot. at 23.)  "Arguable probable cause exists 'where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[ ] could have believed that probable cause existed to arrest.'"  Lee v. Ferraro, 284 F.3d 1188, 1195 (11th Cir. 2002).  The Court has already determined that Mulvey and Loyal's arguable probable cause argument fails under the Eleventh Circuit's decision in Kingsland, which held that "[i]f the defendants fabricated or unreasonably disregarded certain pieces of evidence to establish probable cause or arguable probable cause, as alleged, reasonable officers in the same circumstances and possessing the same knowledge as the defendants could not have believed that probable cause existed to arrest the plaintiff."  382 F.3d at 1233; see also Holmes, 321 F.3d at 1083-84 (reversing the grant of qualified immunity where factual questions existed regarding whether the officers filed a recklessly false application for an arrest warrant); Garmon, 878 F.2d at

1410-11 (holding that sheriff was not entitled to qualified immunity where he directed an investigator to submit a warrant application that contained knowingly false statements).

Accordingly, Mulvey and Loyal are not entitled to sovereign immunity from Paez, Peters, and Diaz's claims for malicious prosecution under state law.

> **e.**   **Counts V & VI (Anterio):**
> **Abuse of criminal process under Florida Law against Mulvey and Loyal, respectively**

Anterio's Counts V and VI allege abuse of criminal process under Florida law against Mulvey and Loyal, respectively.  (Compl. ¶¶ 347-358.)  Mulvey and Loyal seek to dismiss Anterio's state law abuse of criminal process claim on the grounds that (1) it fails to state a claim upon which relief can be granted, and (2) it is barred by sovereign immunity.  (Mot. at 22-23, 36-39, 44-45.)

Turning to whether Anterio's Counts V and VI state a claim for abuse of process under Florida law, the Court pauses to articulate an important distinction between a claim for <u>malicious prosecution</u> and one for <u>abuse of process</u>.  "An action for abuse of process differs from an action for malicious prosecution in that the latter is concerned with maliciously causing process to issue, while the former is concerned with the improper use of process <u>after</u> it has been issued."  <u>McMurray v. U-Haul Co., Inc.</u>, 425 So. 2d 1208, 1209 (Fla. Dist. Ct. App. 1983) (emphasis added); <u>Marty v. Gresh</u>, 501 So. 2d 87, 89 (Fla. Dist. Ct. App. 1987) (same); <u>see also</u> <u>Jennings v. Shuman</u>, 567 F.2d 1213, 1218-19 (3d Cir. 1977) (explaining that malicious prosecution lies if the justification given for <u>issuance of process</u> is illegitimate, and abuse of process lies if <u>the use to which process is put</u> is illegitimate).  For example, if a defendant initiates process by knowingly making

false statements in an affidavit for arrest, there may be a claim for malicious prosecution (provided the other elements of the tort are satisfied).  See Manley v. Stube, No. 8:08-CV-2165-T-17AEP, 2010 WL 935701, at *6 (M.D. Fla. Mar. 9, 2010) (citing Whiting v. Traylor, 85 F.3d 581, 585 (11th Cir. 1996)).  If a defendant threatens a plaintiff with extortion after process has issued, there may be a claim for abuse of process.  See Jennings, 567 F.2d at 1219; Dunn v. Koehring, 546 F.2d 1193, 1199 (5th Cir. 1977). With this distinction in mind, the Court turns to abuse of process under Florida law.

"Under Florida law, abuse of process involves the use of criminal or civil legal process against another primarily to accomplish a purpose for which it was not designed." Whitney Info. Network, Inc. v. Gagnon, 353 F. Supp. 2d 1208, 1212 (M.D. Fla. 2005).  A cause of action for abuse of process requires allegations (1) of a willful and intentional misuse of process for some wrongful or unlawful object, or collateral purpose, and (2) that the act or acts constituting the misuse occur after the process is issued.  Miami Herald Publ'g Co. v. Ferre, 636 F Supp. 970, 975 (S.D. Fla. 1985) (citations omitted). "No abuse of process exists when the process is used to accomplish the result for which it is created, regardless of an incidental motive of spite or ulterior purpose."  Pottinger v. City of Miami, 810 F. Supp. 1551, 1565 (S.D. Fla. 1992) (citations omitted).  "[T]he usual case of abuse of process involves some form of extortion."  Bothmann v. Harrington, 458 So. 2d 1163, 1169 (Fla. Dist. Ct. App. 1984).

Mulvey and Loyal argue that: (1) the arrest warrant was not used to achieve any improper purpose; (2) ASA Altfield was responsible for the alleged extortion of Anterio;

and (3) the claim that Loyal acted with ulterior motives is insufficient pled.  (Mot. at 37-38.)

Here, the process—i.e., the arrest warrant—was never used to accomplish the result for which it was created—i.e., Anterio's arrest.  However, it <u>was</u> used to accomplish a purpose for which it was not designed—i.e., to extort Anterio of $1,805.00 he did not owe to Golden Beach and force Anterio to surrender his Florida law enforcement certificate.  (Compl. ¶¶ 350, 356.)  On the other hand, it was ASA Altfield who is alleged to have extorted Anterio.  (Compl. ¶¶ 31, 34.)  The question becomes whether the Complaint states a claim for abuse of process against Mulvey and Loyal when the alleged abuse was performed by ASA Altfield.

The Complaint alleges that "[i]n an effort to illegally <u>secure</u> an arrest warrant against Anterio with the wrongful intent and purpose of using that warrant . . . to extort Anterio under threat of arrest," Mulvey and Loyal knowingly submitted a false affidavit in support of Anterio's arrest.  (Compl. ¶¶ 348, 354 (emphasis added).)  Based on this affidavit, the circuit judge issued the warrant for Anterio's arrest, and "Altfield, instead of using the warrant to arrest and prosecute Anterio, used it to compel Anterio into paying to Golden Beach the illegal debt and surrendering his Florida law enforcement certificate and career as a law enforcement officer."  (<u>Id.</u> ¶¶ 349, 355.)  Finally, it alleges that Mulvey and Loyal's actions "were taken in bad faith and with malicious and improper purpose . . . ."  (<u>Id.</u> ¶¶ 351, 357.)

The Court finds that the allegations against Mulvey and Loyal sound in malicious prosecution, not abuse of process.  A claim for malicious prosecution under Florida law

"is concerned with maliciously causing process to issue, while [abuse of process] is concerned with the improper use of process <u>after</u> it has been issued." <u>McMurray</u>, 425 So. 2d at 1209 (emphasis added); <u>Marty</u>, 501 So. 2d at 89.  The Complaint accuses Mulvey and Loyal of maliciously "secur[ing]" and "[o]btaining" the arrest warrant by submitting a false affidavit, i.e., maliciously causing process to issue.  (Compl. ¶¶ 348, 350, 354, 356.)  It alleges that ASA Altfield is the one who improperly used the arrest warrant to extort Anterio after it had been issued.  (<u>Id.</u> ¶¶ 349, 355.)  Accordingly, the Court finds that Anterio failed to state a claim against Mulvey and Loyal for abuse of criminal process, and Anterio's Counts V and VI must be dismissed without prejudice.

      **f.**    <u>**Count XII (Paez, Peters, Diaz) and Count X (Anterio)**</u>**:**
           **Negligent supervision against FDLE under Florida law**

All four Plaintiffs allege negligent supervision against FDLE under Florida law. (<u>See</u> Compl. ¶¶ 120-124, 214-218, 309-313, 372-376.)  They allege that FDLE breached a duty of care it owed Plaintiffs

> by failing to properly supervise Mulvey and Breeden in the manner and methods they used to conduct the investigation of [Plaintiffs] in that they: (a) allowed Mulvey and Breeden to willfully and maliciously, and in bad faith, continue with a time consuming and unnecessary investigation based on unreliable and unsupported accusations, no evidentiary support, and in the face of substantial exculpatory evidence that no crimes had been committed; and (b) allowed Mulvey, with Breeden's review and approval, to willfully and maliciously, and in bad faith and outside the course and scope of their employment, manipulate the investigative findings, ignore substantial exculpatory evidence, and prepare and issue a deliberate and reckless false and misleading probable cause affidavit that resulted in [Paez, Peters, and Diaz's] false arrest, false imprisonment, and malicious prosecution[,] . . . and the improper abuse of criminal process in issuance of Anterio's arrest warrantand the use of that warrant to extort Anterio into surrendering his police certificate and career as a law enforcement officer,

and paying Golden Beach an improperly charged off-duty work administrative fee.

(Id. ¶¶ 122, 216, 311, 374.)  FDLE argues these claims fail as a matter of law because there is no allegation that FDLE had prior notice of Mulvey and Breeden's unfitness. (Mot. at 62.)  Plaintiffs argue that under Florida law, allegations of prior misconduct or similar actions are not essential to a negligent supervision claim against a government entity.  (Resp. at 24.)

Florida courts recognize a claim for negligent supervision involving the state or one of its agencies as a defendant.  See Dep't of Envtl. Prot. v. Hardy, 907 So. 2d 655, 660 (Fla. Dist. Ct. App. 2005) (citing Storm v. Town of Ponce Inlet, 866 So. 2d 713, 716 (Fla. Dist. Ct. App. 2004)).  "Negligent supervision occurs when during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further actions such as investigation, discharge, or reassignment."  Id. (citing Garcia v. Duffy, 492 So. 2d 435, 438-39 (Fla. Dist. Ct. App. 1986)).  "The plaintiff must allege facts sufficient to show that once an employer received actual or constructive notice of problems with an employee's fitness, it was unreasonable for the employer not to investigate or take corrective action."  Id. (citing Garcia, 492 So. 2d at 441). Additionally, the employer's breach "must be the proximate cause of the plaintiff's harm."  Id. (citing Watson v. City of Hialeah, 552 So. 2d 1146, 1149 (Fla. Dist. Ct. App. 1989)).  "There must be a connection and foreseeability between the employee's employment history and the current tort committed by the employee."  Id. (citing

Dickinson v. Gonzalez, 839 So. 2d 709, 713-14 (Fla. Dist. Ct. App. 2003) (citing Island City Flying Serv. v. Gen. Elec. Credit Corp., 585 So. 2d 274, 277 (Fla. 1991))).

Plaintiffs argue that Breeden knew about "exculpatory and contradictory evidence and information regarding Plaintiffs and also learned that Plaintiffs had not committed any crimes, yet allowed Mulvey, together with Loyal, to unnecessarily continue the investigation and manipulate the investigative results against Plaintiffs." (Resp. at 25.) "As Breeden, as a supervisor, had knowledge of Mulvey's improper actions in connection with and during the investigation, yet failed to take an corrective [sic] actions to stop the investigation and prevent harm to Plaintiffs, FDLE would at least have had constructive knowledge of Mulvey's incompetence or unfitness to continue to conduct the investigation." (Id. at 26.)

The Court finds that these claims fail for reasons not discussed by the Parties—specifically, because a claim for negligent supervision under Florida law "requires that the actions of the employee be outside the course and scope of the employee's employment." City of Boynton Beach v. Weiss, 120 So. 3d 606, 610 (Fla. Dist. Ct. App. 2013). In Mallory v. O'Neil, 69 So. 2d 313, 315 (Fla. 1954), the Supreme Court of Florida adopted Section 317 of the Restatement of Torts. In Malicki v. Doe, the Supreme Court of Florida recognized that Section 317 of the Restatement (Second) of Torts (1965) "is identical to its predecessor," and provides:

Duty of Master to Control Conduct of Servant.

A master is under a duty to exercise reasonable care so to control his servant while acting outside the course of his employment as to prevent him

<u>from intentionally harming others</u> or from so conducting himself as to create an unreasonable risk of bodily harm to them, if

(a) the servant

(i) is upon the premises in the possession of the master or upon which the servant is privileged to enter only as his servant, or

(ii) is using a chattel of the master, and

(b) <u>the master</u>

(i) knows or has reason to know that he has the ability to control his servant, and

(ii) <u>knows or should know of the necessity and opportunity for exercising such control.</u>

814 So. 2d 347, 361 n.14 (Fla. 2002) (emphasis provided by <u>Malicki</u>).  Thus, "'the alleged acts by employees giving rise to liability for negligent supervision <u>must occur outside the employees' scope of employment</u>.'"  <u>Belizaire v. City of Miami</u>, 944 F. Supp. 2d 1204, 1215 (S.D. Fla. 2013) (quoting <u>Santillana v. Fla. State Court Sys.</u>, No. 6:09-cv-2095-Orl-19KRS, 2010 WL 271433, at *11 (M.D. Fla. Jan. 14, 2010)); <u>see also</u> <u>Total Rehab. & Med. Ctrs., Inc. v. E.B.O.</u>, 915 So. 2d 694, 696 (Fla. Dist. Ct. App. 2005). "Conduct is within the scope of employment if it occurs substantially within authorized time and space limits, and it is activated at least in part by a purpose to serve the master." <u>McGhee v. Volusia Cnty.</u>, 679 So. 2d 729, 732 (Fla. 1996) (quoting <u>Hennagan v. Dep't of Highway Safety & Motor Vehicles</u>, 467 So. 2d 748, 751 (Fla. Dist. Ct. App. 1985)).

Here, the Complaint does not allege that any of the Mulvey or Breeden's actions occurred outside the scope of their employment as FDLE agents.  (<u>See</u> Compl. ¶¶ 13-41.)

Accordingly, Plaintiffs claims for negligent supervision against FDLE must be dismissed without prejudice.

### h.   Count XIII (Paez, Peters, Diaz) and Count XI (Anterio): Negligent supervision/retention against MDC under Florida law

All four Plaintiffs allege that MDC negligently supervised and retained Defendants Loyal and Sullivan. (Compl. ¶¶ 125-130, 219-224, 314-319, 377-81.)[9]  MDC argues that those claims are barred because the alleged conduct occurred within the scope of employment.[10]  (Mot. at 63-65.)  Plaintiffs completely fail to address this argument in their Response.  (See Resp. at 26-28.)

As discussed in the preceding subsection, a claim for negligent supervision under Florida law "requires that the actions of the employee be outside the course and scope of the employee's employment."  Weiss, 120 So. 3d at 610.  Likewise, "'[b]y its very nature, an action for negligent retention involves acts which are not within the course and scope of employment . . . .'"  Id. (quoting Watson, 552 So. 2d at 1148); see also Belizaire, 944 F Supp. 2d at 1215 (granting the defendant's motion to dismiss "[b]ecause Florida law ties liability under the theory of negligent retention to acts committed outside the scope of employment"); Johnson v. Scott, No. 2:13–cv–500–FtM–38UAM, 2013 WL 5928931, at *6 (M.D. Fla. Nov. 1, 2013) ("A negligent hiring, retention, or supervision claim is allowed against an employer for acts of an employee committed outside the scope and course of employment.").

---

[9]      Anterio's Count XI contains two Paragraphs numbered 377.

[10]      MDC also argues that sovereign immunity bars the negligent supervision portion of Plaintiffs' claims, and that the claims are insufficiently pled.  (Mot. at 65-69.)

Plaintiffs Complaint does not allege, and their Response does not argue, that any of Loyal or Sullivan's actions occurred outside the scope of their employment as MDC employees.   (See Resp. at 26-28.)   Accordingly, Plaintiffs claims for negligent supervision and retention against MDC must be dismissed without prejudice.   See Belizaire, 944 F. Supp. 2d at 1215.

i.   **Count XIV (Paez)[11] and Count XII (Anterio):**
**Respondeat superior liability against Golden Beach for the negligence of A. Diaz, Camacho, and Skinner under Florida law**

Finally, Paez and Anterio assert claims against the Town of Golden Beach for respondeat superior liability for the negligence of Town Manager Alexander Diaz ("A. Diaz"), Town Finance Director Maria Camacho, and Police Chief James Skinner. (Compl. ¶¶ 131-135, 225-229, 382-386.)  These negligent acts include:

a) Negligent implementation and enforcement of an unwritten policy and practice, to charge the Golden Beach police officers an administrative fee that was properly and only to be charged to off-duty employers of the police officers, as specifically provided by the terms of the CBA and prior Golden Beach written policy, and was not chargeable at all to part-time officers.

. . .

c)  Negligent maintenance of records regarding payment of the administrative fees by the police officers, that resulted in, but did not accurately reflect, the police officers actually over-paying the fees they were charged.

d)  Negligent provision of incorrect information to the FDLE and MDC investigators that it was proper and supported by the terms of the CBA to charge the Golden Beach police officers instead of the off-duty employers,

---

[11]       As noted in Section I, supra, on September 9, 2016, Peters and the Town of Golden Beach filed a Stipulation For Dismissal With Prejudice of Peters' Claims Against Golden Beach.  (D.E. 81.)

the administrative fee, and that the officers had paid, and in some cases overpaid, the charged administrative fee.

e) Negligent implementation and following of an unwritten "flex time" policy and practice that led to a misperception that Golden Beach police officers were receiving double compensation for both on-duty and off-duty work, when in fact they were not.
. . .

g) Negligent failure to provide the State Attorney's Office and the FDLE and MDC investigators with explanation and exculpatory information and evidence, which were available to A. Diaz, Camacho, and Skinner, to exonerate Plaintiffs and demonstrate that Plaintiffs had not engaged in any criminal or wrongful conduct.

h) Negligent failure to inform the State Attorney's Office and the FDLE and MDC investigators that Plaintiffs had not in fact engaged in any of the alleged criminal conduct and that Golden Beach had not been the victim of any crime, either prior to the arrest and during the prosecution of Plaintiffs.

(Id. ¶¶ 132, 226, 383.)[12]  Golden Beach characterizes Plaintiffs claims as falling into two broad categories: (1) negligently communicating misleading information to third-parties, as alleged in (c), (d), (g), and (h); and (2) negligently creating and implementing personnel policies addressing off-duty details, as alleged in (a), and (e).  (Mot. at 70; Reply at 22.)  As to the first, Golden Beach argues that it had no common law duty of care to provide accurate information.  (Mot. at 70.)  As to the second, it argues that sovereign immunity bars the claims.  (Id. at 72.)

In their Response, Paez and Anterio reject the Town's characterization of their claims and argue that their claims involve "the unique duty of care owed by an employer to its employees . . . to provide and maintain a safe place to work."  (Resp. at 31 (citing

---

[12]    Paez, Peters, and Anterio withdraw the allegations contained in Paragraphs 132(b) and (f), 226(b) and (f), and 383(b) and (f).  (Resp. at 35 n.5.)

Richards Co. v. Harrison, 262 So. 2d 258 (Fla. Dist. Ct. App. 1972)).  Golden Beach argues in its Reply that this is an entirely "new, unpled theory of liability against the Town," (Reply at 22), a fact Plaintiffs concede in their Response, (D.E. 75 at 34 n.4). However, Plaintiffs argue that their allegation that Golden Beach owed them a duty "to not harm" them encompasses the duty to provide and maintain a safe place to work.  (Id.) Alternatively, they seek leave to amend by interlineation.  (Id.)

First, the Court finds that the Complaint fails to state a negligence claim against Golden Beach under the doctrine of respondeat superior.  The Complaint confuses vicarious liability under the doctrine of respondeat superior with direct liability for an employer's own negligence.  Under the doctrine of respondeat superior,

> An employer is vicariously liable for compensatory damages resulting from the negligent acts of employees committed within the scope of their employment even if the employer is without fault.  This is based upon the long-recognized public policy that victims injured by the negligence of employees acting within the scope of their employment should be compensated even though it means placing vicarious liability on an innocent employer.

Mercury Motors Exp., Inc. v. Smith, 393 So. 2d 545, 549 (Fla. 1981); see also Walsingham v. Browning, 525 So. 2d 996, 997 (Fla. Dist. Ct. App. 1988) ("In an action against an employer for the actions of the employee based upon the theory of vicarious liability or respondeat superior, the plaintiff must show liability on the part of the employee: '[I]f the employee is not liable the employer is not liable.'") (quoting Mallory, 69 So. 2d at 314).  Thus, to state a negligence claim against an employer on the doctrine of respondeat superior, the complaint must adequately allege that an employee was

negligent while acting within the scope of his employment.  <u>See</u> <u>id.</u>  "[T]he negligence of the employer is immaterial[.]"  <u>Mallory</u>, 69 So. 2d at 314.

Here, Plaintiff do not alleged that A. Diaz, Camacho, and Skinner breached a duty that they owed to Plaintiffs and that Golden Beach is vicariously liable for their negligence.  Rather, they allege that <u>Golden Beach</u> breached a duty that <u>Golden Beach</u> owed to Plaintiffs.  (<u>See</u> Compl. ¶¶ 132, 226, 383 ("Golden Beach, as [Plaintiffs'] employer, owed [Plaintiffs] a duty of care to act in good faith with regard to [Plaintiffs'] employment . . . Golden Beach breached this duty of care . . . when A. Diaz, Camacho, and Skinner, acting in the course and scope of their employment . . . , engaged in various negligent acts and omissions . . . .").  Thus, Plaintiffs are not alleging that they should be compensated by an "innocent employer" for the acts of its negligent employee, <u>Mercury Motors</u>, 393 So. 2d at 549; rather, they are alleging that the employer itself was negligent. (<u>See</u> <u>id.</u> ¶¶ 133-134, 227-228, 384-385 ("As a direct and proximate result of the negligence of Golden Beach . . . .").

The Court declines to analyze whether Paez and Anterio stated a claim for Golden Beach's direct negligence, because <u>if</u> they did it was entirely accidental, as evidenced by the fact that they labeled their claims "Respondeat Superior Liability . . . Negligence of Diaz, Camacho, and Skinner."  Because the Court has found that Paez and Anterio have failed to state a claim for respondeat superior liability based on the negligence of A. Diaz, Camacho, and Skinner, the Court need not go any further.  If Paez, Peters, and Diaz wish to assert a claim against Golden Beach for its direct negligence, they may do so in an amended complaint under an appropriate heading.

Accordingly, Paez and Anterio have failed to state a claim for respondeat superior liability; Count XIV (Paez) and Count XII (Anterio) are dismissed without prejudice.

## IV.   Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** that:

1.  Defendants' Joint Motion to Dismiss Plaintiffs' Joint and Consolidated Amended Complaint is **GRANTED IN PART AND DENIED IN PART** consistent with this Order;

2.  The following claims are **DISMISSED WITHOUT PREJUDICE** for failure to state a claim:

    a)  Count V (Paez and Diaz);

    b)  Counts XII and XIII (Paez, Peters, and Diaz);

    c)  Count XIV (Paez);

    d)  Counts I, II, III, IV, V, VI, X, XI, and XII (Anterio);

3.  The following claims are **DISMISSED WITHOUT PREJUDICE** voluntarily by Plaintiffs:

    a)  Counts I, II, VII, VIII, and XI (Paez, Peters, and Diaz); and

    b)  Counts VII, VIII, and IX (Anterio); and

4.  Plaintiffs shall have fourteen days from the date of this Order within which to file an Amended Complaint or **SHOW CAUSE** why the stay should not be lifted and the remaining claims proceed to discovery.

**DONE AND ORDERED** in Chambers at Miami, Florida this 19th day of October, 2016.

_____
**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**